FILED
2014 Dec-15 PM 01:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **JWAUN WARD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Civil Action No. 5:13-CV-1411-CLS** |
| ) | |
| **MUNICPAL UTILITIES** ) | |
| **BOARD OF DECATUR,** ) | |
| **MORGAN COUNTY, ALBAMA,** ) | |
| **d/b/a DECATUR UTILITIES,** ) | |
| ) | |
| **Defendant.** ) | |

### MEMORANDUM OPINION AND ORDERS

This action was brought by Jwaun Ward against his former employer, the Municipal Utilities Board of Decatur, Morgan County, Alabama, doing business as the "Decatur Utilities." Plaintiff's complaint asserts claims of race discrimination, harassment, retaliation, and a hostile work environment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., and 42 U.S.C. § 1981.[1] Plaintiff's complaint also asserts supplemental state-law claims of wanton and negligent supervision.[2] *See* 28 U.S.C. § 1367(a). The case presently is before the court on defendant's motion for partial summary judgment on plaintiff's race

---

[1] Doc. no. 1 (Complaint), ¶¶ 55–66.

[2] *Id.* ¶¶ 67–72.

1

discrimination and retaliatory termination claims, and his state-law claims of wanton and negligent supervision.[3]  Plaintiff concedes that summary judgment is due to be entered in favor of defendant on the latter, state-law claims.[4]  Upon consideration of the pleadings, briefs, and evidentiary submissions as they relate to plaintiff's federal claims for race discrimination and retaliatory termination, this court concludes that the motion should be granted in part and denied in part.

## I.  SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v.*

---

[3] Doc. no. 10 (Summary Judgment Motion).

[4] Doc. no. 15 (Response to Summary Judgment Motion), at 2.

*City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation."  *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983) (alteration supplied).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis and alteration supplied).  *See also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251–52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II.  SUMMARY OF FACTS

Defendant, Decatur Utilities, provides electricity, natural gas, water, and wastewater services to the residents of the City of Decatur, Alabama.[5]  Plaintiff, Jwaun Ward, is an African-American.[6]  He was hired as a crewman on one of Decatur

---

[5] Doc. no. 12-1 (Nosal Declaration), ¶ 1.

[6] Doc. no. 15 (Response to Summary Judgment Motion), at 1.

Utilities' natural gas crews in January of 2011, and was moved to the same position on a water main crew approximately six months later.[7] Ward obtained a Commercial Driver's License in October of 2011, which allowed him to drive commercial vehicles for his employer.[8]

## A.    Defendant's Drug Testing Policy

Certain utility employees are subject to random drug testing, depending upon their job duties.  For example, federal regulations require utility companies to test employees who maintain a Commercial Driver's License, as well as employees who may be called upon to perform work on a gas pipeline.[9]  The Human Resources Manager of Decatur Utilities oversees the company's drug testing procedures:  *i.e.*, four times a year, a computer randomly selects a group of employees to undergo drug testing, and those individuals are required to immediately submit to an on-site urinalysis.[10]

The Decatur Utilities drug testing policy defines the following "Levels of Disciplinary Action":

---

[7] Doc. no. 12-2 (Ward Deposition), at 11–12, 16–17.  Ward remained in that position until his employment was terminated on September 19, 2012. *Id.* at 18; doc. no. 12-4 (Lamb Deposition), at 38.

[8] Doc. no. 12-2 (Ward Deposition), at 24.

[9] Doc. no. 12-1 (Nosal Declaration), ¶ 4.

[10] Doc. no. 12-4 (Lamb Deposition), at 14–15

4

2. Employees who have a [Medical Review Officer] verified positive drug test result will be suspended for ten (10) working days without pay and referred immediately to a [Substance Abuse Professional].

3. Refusal to report for assessment with a [Substance Abuse Professional] is grounds for immediate termination.

4. Refusal to enter or successfully complete rehabilitation or treatment program is grounds for immediate termination.

Doc. no. 12-3 (Decatur Utilities Drug Testing Policy), at ECF 21 (alterations supplied). An employee handout summarizing the company's drug testing policy warns that "employees who refuse to submit to drug and alcohol testing may be subject to immediate termination."[11] An employee's refusal to take a drug test is considered to be the equivalent of a positive drug test result.[12]

## B. Plaintiff's Refusal to Submit to Testing

Jwaun Ward was randomly selected, along with five other employees, to take a drug test on September 6, 2012.[13] That was the second occasion during 2012 that

---

[11] Doc. no. 12-2 (Drug and Alcohol Policy Summary), at ECF 40. "ECF" is the acronym for "Electronic Case Filing," a system that allows parties to file and serve documents electronically. *See Atterbury v. Foulk*, No. C-07-6256 MHP, 2009 WL 4723547, *6 n.6 (N.D. Cal. Dec. 8, 2009). Bluebook Rule 7.1.4 *permits* citations to the "page numbers generated by the ECF header." *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 257 n.5 (D.D.C. 2011) (citing *The Bluebook: A Uniform System of Citation* R. B. 7.1.4, at 21 (Columbia Law Review Ass'n *et al.*, 19th ed. 2010)). Even so, the Bluebook recommends "against citation to ECF pagination in lieu of original pagination." *Wilson*, 772 F. Supp. 2d at 257 n.5. Thus, unless stated otherwise, this court will cite the original pagination in the parties' pleadings. When the court cites to pagination generated by the ECF header, it will, as here, precede the page number with the letters "ECF."

[12] Doc. no. 12-3 (Hardin Deposition), at 31.

[13] Doc. no. 12-4 (Lamb Deposition), at 66–70.

5

Ward had been selected.[14]  Human Resources Manager Christy Lamb oversaw the drug testing of the six individuals.[15]  On the morning of his selection, Ward was instructed by his supervisor in the presence of other employees to drive to the front office, and to "go pee in a cup in front of the work group."[16]  Ward felt "humiliated, embarrassed, and belittled" by his supervisor's comments.[17]  Those feelings were exacerbated by the fact that, during the previous months of May and June, the same supervisor had said that Ward "was going to be the first nigger that he fired [for failing] a drug test," and that he was going to make Ward take "four or five" more drug tests before the end of the year in an effort to "kill him with the drug test."[18]

Rather than drive to the front office to take the test, however, Ward went to the office of Superintendent Butch Smith and stated that he was going home, and explained that he was "not going to entertain [his supervisor's] request because of the way he asked."[19]  At Butch Smith's request, Ward called Human Resources Manager

---

[14] Doc. no. 12-2 (Ward Deposition), at 88.

[15] Doc. no. 12-4 (Lamb Deposition), at 9, 14.

[16] Doc. no. 12-2 (Ward Deposition), at 112.

[17] *Id.* at 113.

[18] *Id.* at 106–108 (alteration supplied).  Significantly, neither party addressed these comments — or the many other instances in which Ward was subjected to racist remarks and threats by supervisors and fellow employees — in their briefs on this motion.  *See, e.g.*, doc. nos. 11, 15, 16. It is undisputed, however, that Ward was selected randomly by a computer.  *Compare* doc. no. 11 (Summary Judgment Brief), at 3, ¶¶ 9–10, *with* doc. no. 15 (Response to Summary Judgment Motion), at 3, ¶¶ 1–12 (admitting defendant's statement that Ward was selected randomly by a computer).

[19] Doc. no. 12-2 (Ward Deposition), at 113.

Christy Lamb before leaving the premises and told her about his supervisor's comments.[20]  Lamb told Ward that he was selected at random, and that if he refused to take the drug test, then his employment would be terminated.[21]  Ward informed Lamb that he did not take issue with the drug test, only the manner in which his supervisor addressed him.[22]  Lamb did not ask Ward to take the drug test during that conversation, even though he offered to do so.[23]  Ward asked Lamb to meet with him on the following morning, and Lamb agreed.[24]

Ward met with Christy Lamb and Manager Jimmy Evans on the following morning, September 7, 2012, to discuss the drug test.[25]  Lamb asserted that Ward had refused to take the drug test on the previous day, but Ward denied that assertion and then offered again to take the test.[26]  Lamb and Evans did not accept the offer.  Ward also stated that he had suffered mistreatment from fellow employees and from his supervisors because of his race.  This was the first such complaint Ward had made to a Human Resources officer at Decatur Utilities.[27]  Lamb and Evans suspended Ward

---

[20] *Id.* at 113, 116.

[21] *Id.* at 115.

[22] *Id.* at 120.

[23] *Id.*

[24] *Id.* at 121.

[25] Doc. no. 12-2 (Ward Deposition), at 118.

[26] *Id.*

[27] *Id.* at 111-112.

for refusing the drug test, and stated that Manager Jimmy Evans would investigate his allegations.[28]

Christy Lamb informed Ward during a telephone conversation on September 14, 2012, that he would be required to complete a drug awareness program in order to retain his employment at Decatur Utilities.[29]  Ward refused.  He later testified: "I was not okay with that.  Never had an issue with drug abuse, drugs, nothing.  I mentioned to Christy Lamb that that was not me to attend a drug awareness program."[30]

## C.    Termination

Beginning on September 6, 2012, following Ward's refusal to report for drug testing, Human Resources Manager Christy Lamb frequently briefed her supervisor, General Manager Ray Hardin, on Ward's situation.[31]   During a meeting on some undisclosed date after September 6th, but before September 19th, Lamb informed Hardin that Jimmy Evans's investigation had revealed no evidence of racially motivated mistreatment of Ward.[32]   The two also discussed Ward's drug testing during that meeting:  an issue that Hardin described as "independent" of Evans's

---

[28] *Id.* at 119, 122; doc. no. 12-3 (Hardin Deposition), at 10, 12.

[29] Doc. no. 12-2 (Ward Deposition), at 122–24.

[30] *Id.* at 124.

[31] Doc. no. 12-3 (Hardin Deposition), at 10.

[32] *Id.* at 38.

investigation.[33]    Lamb recommended that Hardin terminate Ward's employment, based upon his refusal to see a Substance Abuse Professional or to enter a drug awareness program.[34]    Hardin accepted Lamb's recommendation.[35]

Christy Lamb met with Ward on September 19, 2012, and informed him that his employment with Decatur Utilities had been terminated.[36]    She did not give him a reason for his termination.[37]

## D.    Equal Employment Opportunity Commission Charge and Dismissal

Plaintiff filed a formal "Charge of Discrimination" with the Equal Employment Opportunity Commission on October 12, 2012.[38]    The agency issued a "Dismissal and Notice of Rights" on May 9th of the following year, stating that it had terminated its investigation of his charge because it was unable to conclude that the information obtained established violations of the civil rights statutes.[39]    That document notified plaintiff of his right to file suit, and this action followed.

## III.  DISCRIMINATORY TERMINATION

Ward's discriminatory termination claim is asserted under Title VII of the Civil

---

[33] *Id.* at 39; *see also id.* at 12.

[34] *Id.* at 39; doc. no. 12-4 (Lamb Deposition), at 56.

[35] Doc. no. 12-3 (Hardin Deposition), at 39–40.

[36] Doc. no. 12-2 (Ward Deposition), at 125; doc. no. 12-4 (Lamb Deposition), at 38.

[37] Doc. no. 12-2 (Ward Deposition), at 126.

[38] Doc. no. 26 (EEOC Charge), at ECF 3–4.

[39] *Id.* (Dismissal and Notice of Rights), at ECF 7.

Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., as well as 42 U.S.C. § 1981.[40] "Both of these statutes have the same requirements of proof and use the same analytical framework . . . ." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). The essential element under each statute is proof that the employer intentionally inflicted the adverse employment action complained of because of the plaintiff's race. *See, e.g.*, *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 767 (11th Cir. 2005) (observing that disparate treatment claims based upon a plaintiff's race and "brought under Title VII, § 1981, and § 1983, all require proof of discriminatory intent").

Ward attempts to establish Decatur Utilities' discriminatory intent through the use of circumstantial evidence.[41] Federal courts evaluate the sufficiency of such evidence using some variant of the analytical framework announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See also, e.g.*, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2004) (*en banc*); *Berman v. Orkin Exterminating Co., Inc*., 160 F.3d 697, 701 (11th Cir. 1998); *Bigge v. Albertsons,*

---

[40] Doc. no. 1 (Complaint), ¶¶ 38–46.

[41] *See* doc. no. 15 (Response to Summary Judgment Motion), at 8.

*Inc.*, 894 F.2d 1497, 1501 (11th Cir. 1990). Under that familiar framework, a plaintiff must first establish a *prima facie* case of disparate treatment, which creates a presumption of discrimination.  To rebut that presumption, the employer must articulate a legitimate, nondiscriminatory reason for the contested employment action. If the employer does so, the presumption of discrimination drops from the case, and the burden shifts back to the plaintiff to show that the employer's proffered reason is merely a pretext for unlawful discrimination. *See, e.g.*, *McDonnell Douglas*, 411 U.S. at 802–05; *Burdine*, 450 U.S. at 252–56.

The specific elements of a plaintiff's *prima facie* case generally vary with the nature of the adverse employment action that is complained of.  When, as here, the adverse employment action is disciplinary, a plaintiff usually must prove that:  he belongs to a protected class; he suffered an adverse employment action; he was qualified for the position he held; and his employer treated similarly situated employees outside his protected class more favorably.  *See, e.g.*, *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 (11th Cir. 2011); *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008); *Burke-Fowler v. Orange County, Florida*, 447 F.3d 1319, 1323 (11th Cir. 2006); *Knight v. Baptist Hospital of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003); *Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999).

Ward has not identified an employee outside of his protected class who was treated more favorably.[42]   Nevertheless, he contends that, under *Jones v. Gerwens*, 874 F.2d 1534 (11th Cir. 1989), he can establish a *prima facie* case by showing that he did not violate the work rule for which he was disciplined.[43]   In *Gerwens*, the Eleventh Circuit held that

> in cases involving alleged racial bias in the application of discipline for violation of work rules, the plaintiff, in addition to being a member of a protected class, must show either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct.

*Id.* at 1540.  That holding was limited by the Circuit's subsequent holding in *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306 (11th Cir. 1998), in which the panel stressed that

> under the *Jones* formulation, no plaintiff can make out a *prima facie* case by showing just that she belongs to a protected class and that she did not violate her employer's work rule.  The plaintiff must also point to someone similarly situated (but outside the protected class) who disputed a violation of the rule and who was, in fact, treated better.

*Id.* at 1311 n.6.

Ward contends that, pursuant to the prior precedent rule, the *Bessemer* panel

---

[42] Doc. no. 15 (Response to Summary Judgment Motion).

[43] *Id.*

12

could not so limit the prior panel's holding in *Gerwens*. *See United States v. Steele*, 147 F.3d 1316, 1317–18 (11th Cir. 1998) (*en banc*) ("Under our prior precedent rule, a panel cannot overrule a prior one's holding even though convinced it is wrong."). That rule does not apply to *dicta* in a prior panel's decision, however. *See Swann v. Southern Health Partners, Inc.*, 388 F.3d 834, 837 (11th Cir. 2004) (holding that "the prior panel rule does not extend to *dicta*.") *overruled, in part, on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Bessemer* panel explicitly found that the statements in *Gerwens* that are relied upon by Ward were *dicta*: "Considering the facts in *Jones*, our impression is that words about 'did not violate the work rule' are unnecessary to the decision in *Jones* and are *dicta*. 137 F.3d at 1311 n.6. Accordingly, plaintiff's argument fails.

Even so, that is not the end of discussion. A plaintiff who fails to identify a comparator still may create a "triable issue concerning the employer's discriminatory intent" by showing a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). The plaintiff in *Smith* overcame his failure to identify a comparator by offering "compelling evidence of . . . numerous incidents where the discipline of white employees varied considerably from that of black employees, and a 'discipline matrix' created by the employer that tracked the

13

discipline and race of employees." *Connelly v. Metropolitan Atlanta Rapid Transit Authority*, 764 F.3d 1358, 1364 (11th Cir. 2014) (some internal quotation marks omitted). The plaintiff's evidence in *Smith* precluded summary judgment, at least in part, because it indicated clearly that the employer "consciously injected race considerations into its discipline decision making without an adequate explanation for doing so." *Smith*, 644 F.3d at 1341.

The evidence here is not nearly so probative of discrimination. Ward has offered no evidence that either Human Resources Manager Christy Lamb or General Manager Ray Hardin considered race in taking any disciplinary action against any Decatur Utilities employee. He has thus failed to establish a *prima facie* case of a discriminatory termination on the basis of race. Accordingly, summary judgment is due to be entered in favor of defendant on that claim.

## IV.  RETALIATORY TERMINATION

Ward also contends that Decatur Utilities terminated his employment in retaliation for his complaints of discrimination and harassment, in violation of Title VII and § 1981.[44] Once again, the elements of proof for a retaliation claim are the same under both Title VII and § 1981. *See, e.g.*, *Standard v. A.B.E.L.*, 161 F.3d at 1330. Moreover, when there is no direct evidence of retaliation, courts again employ

---

[44] Doc. no. 1 (Complaint).

the burden-shifting analytical framework articulated in *McDonnell Douglas* and *Burdine* to evaluate a plaintiff's circumstantial evidence of retaliation.  To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that:  he engaged in statutorily protected activity; he suffered an adverse employment action; and there is a causal connection between the protected activity and the adverse employment action.  *See, e.g.*, *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).  If the plaintiff does so, the employer must come forward with a legitimate, non-retaliatory reason for the adverse employment action.  *Holified v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997).  If the employer does so, the plaintiff then bears the burden of demonstrating that the employer's stated reason is merely a pretextual excuse for retaliation.  *Id.*

This court will assume, for the sake of the following discussion, that Ward made out a *prima facie* case of retaliatory termination, as Decatur Utilities has made no argument to the contrary.[45]  Even so, Decatur Utilities articulated two reasons for terminating Ward's employment: his refusal to take a drug test; and his refusal to be evaluated by a Substance Abuse Professional.[46]  Accordingly, Decatur Utilities met its burden of coming forward with legitimate, non-retaliatory reasons for firing Ward.

---

[45] *See* doc. no. 16 (Reply Brief).

[46] Doc. no. 11 (Summary Judgment Brief), at 7.

In order to show that the employer's stated reasons are merely a pretext for retaliation, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (internal quotation marks omitted); *see also, e.g.*, *Kragor v. Takeda Pharmaceuticals America, Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997); *Cooper-Houston v. Southern Railway Co.*, 37 F.3d 603, 605 (11th Cir. 1994).

Ward acknowledges that he initially refused to take the drug test on September 6, 2012, but testified that he offered to take the test to Human Resources Manager Christy Lamb on that same day, as well as during the meeting with Lamb and Jimmy Evans the following morning.[47]  According to Lamb, such an offer, accompanied by a negative test result, would obviate any need for disciplinary action.[48]

"In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S.

---

[47] Doc. no. 12-2 (Ward Deposition), at 118–120.

[48] Doc. no. 12-4 (Lamb Deposition), at 27.

16

133, 148 (2000).  According to Christy Lamb's own understanding of Decatur Utilities' drug testing policy, Ward was not in violation of that policy once he told Lamb on the afternoon of September 6th that he would take the test.  Accordingly, Ward has demonstrated that Decatur Utilities' first articulated reason for his termination — *i.e.*, his refusal to take the drug test — is unworthy of credence.

As discussed in Part II.A of this opinion, if a Decatur Utilities employee refuses a drug test, then that refusal is treated as a positive test result, and the employee will be required to see a Substance Abuse Professional.[49]  As previously noted, Christy Lamb testified that if Ward had offered to take the drug test, and if the result were negative, then discipline would not have been required.[50]  It follows, then, that Ward's two offers to take the test should have precluded any requirement that he see a Substance Abuse Professional.  Nevertheless, Lamb ignored Ward's offers and instead informed him that he was required to see a Substance Abuse Professional as a condition of his continued employment.[51]  When Ward refused, Lamb recommended his termination to Ray Hardin, and Hardin accepted her recommendation.[52]

An employer's assertion that an employee violated a work rule is "arguably

---

[49] Doc. no. 12-3 (Decatur Utilities Drug Testing Policy), at ECF 21.

[50] Doc. no. 12-4 (Christy Lamb Deposition), at 27.

[51] Doc. no. 12-2 (Ward Deposition), at 123–25.

[52] Doc. no. 12-4 (Christy Lamb Deposition), at 56.

pretextual when a plaintiff submits evidence . . . that [he] did not violate the cited work rule." *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1363 (11th Cir. 1999) (alteration supplied).  By Lamb's own understanding of Decatur Utilities' drug testing policy, Ward was not in violation of that policy once he told her on the afternoon of September 6th that he would take the test.  Nevertheless, Lamb recommended his termination on the basis that he violated company policy by refusing to see a Substance Abuse Professional.  The court concludes that Ward has demonstrated that this second reason for his termination — *i.e.*, his refusal to see a Substance Abuse Professional — is unworthy of credence.

Accordingly, defendant's motion for summary judgment on plaintiff's retaliatory termination claim is due to be denied.

## V.  CONCLUSION

In accordance with the foregoing, Decatur Utilities' motion for partial summary judgment is GRANTED in part and DENIED in part.  The motion as to Jwaun Ward's claims for wanton and negligent supervision is GRANTED, and those claims are DISMISSED with prejudice.  The motion as to Ward's claims for discriminatory termination on the basis of his race is GRANTED, and those claims are DISMISSED with prejudice.  The motion is DENIED in all other respects, and the following claims remain pending: plaintiff's Title VII and § 1981 racial harassment claims (Counts I

and II, respectively); and plaintiff's Title VII and § 1981 retaliatory termination claims (Counts III and IV, respectively).  All remaining claims will be set for pre-trial conference by separate order.

DONE and ORDERED this 15th day of December, 2014.

_____
United States District Judge